**FILED**

**JULY 9, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

JUL 0 9 2008 TC

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| KEVIN McCORMICK | ) |
| | ) |

No. **08 CR 539**

Violations: Title 7, United States Code,
Section 13(a) (4) and Title 18, United States
Code, Sections 1341 and 1343

**JUDGE ANDERSEN**

**COUNT ONE**

**MAGISTRATE JUDGE KEYS**

The SPECIAL MARCH 2007 GRAND JURY charges:

1.    At times material to this indictment:

a.    Futures contracts were traded on contract markets (commonly known as exchanges and boards of trade) designated pursuant to the Commodity Exchange Act by the Commodity Futures Trading Commission (CFTC), the federal agency established by law to regulate transactions involving the purchase and sale of futures contracts. The Chicago Mercantile Exchange (CME) in Chicago was one of these designated futures contract markets.

b.    Futures contracts were standardized, legally binding agreements to buy or sell a specific product or financial instrument in the future. The buyer and seller of a futures contract agreed on a price today for a product to be delivered or settled in cash at a future date.

c.    Equity futures contracts were agreements to buy or sell the value of a specific stock index at a specific price on a specific date in the future.

d.    Two such equity futures contracts bought and sold at the CME were the Standard and Poor's 500 Stock Price Index Futures (S&P 500 futures) and the E-mini Standard and Poor's 500 Stock Price Index Futures (E-mini S&P 500 futures). Both were based on the Standard

and Poor's 500 Stock Price Index, an index comprised of the stock of 500 leading companies in leading industries of the United States economy.

e.   A floor trader was a person authorized to execute futures contract trades on the floor of an exchange for his own account.

f.   A floor trader was required to trade through a clearing firm.  The clearing firm financially assured the performance of each of its customers' trades.

g.   When floor traders agreed on the execution of a futures contract transaction, both traders were required by CME rules to record the trade showing, among other things, the price, quantity, approximate time and opposite side of the trade.  When recorded in writing, typically on trade cards, the trader was required by CME rules to use non-erasable ink and to make any corrections by crossing out erroneous trade information without obliterating or otherwise making illegible any of the originally recorded information.  Traders were then required by CME rules to timestamp and to submit the completed trade cards to their clearing firms within a period of less than 45 minutes from the execution of the trade.  The clearing firms then reported information contained on the trade cards to the exchange's clearing system.  This information was then used in the clearing process, in which transactions were matched by confirming that both the buyers' and the sellers' trade information was in agreement.

h.   An out-trade occurred when one or more terms of a transaction did not match.

i.   CME rules prohibited floor traders from creating or reporting a false or fictitious trade.

j.   A floor trader's position was flat when the trader bought and sold an equal number of the same futures contracts.  If a floor trader bought more contracts than he sold, he had

2

a long position, which was subject to the risk that the price of the contracts would decrease. If a floor trader sold more contracts than he bought, he had a short position, which was subject to the risk that the price of the contracts would increase.

      k.    Floor traders were allowed to engage in futures transactions without paying the full price. The percentage of the purchase price of a contract floor traders were required to have in their trading accounts to establish and hold that position was known as the "margin."

      l.    When market prices moved against a floor trader, the margin amount necessary to maintain the position increased. The floor trader was then called upon to place more money into his trading account to satisfy this increased margin requirement. This process was known as a "margin call."

      m.    If a floor trader was unable to deposit sufficient funds to meet the margin call, the trader's futures positions were subject to being liquidated.

      n.    A floor trader's equity position measured the monetary value of his trading account at a point in time. The profitability of his trading, funds deposited into the account and funds withdrawn from the account all affected this measurement.

      o.    Spike Trading, Inc. (Spike) was an introducing broker, whose customers were floor traders at the CME. Spike's customers' clearing firm was FC Stone, Inc. (FC Stone). Both Spike and FC Stone were registered with the CFTC pursuant to the Commodity Exchange Act. Spike was registered as an introducing broker while FC Stone was registered as a futures commission merchant. In order to limit its risk from trading losses, Spike encouraged its customers to maintain a flat trading position at the end of the day and a positive equity position in their accounts.

p.     Defendant KEVIN McCORMICK, beginning in February 2004, was a customer of Spike, a floor trader in the S&P 500 pit at the CME and cleared his trades through FC Stone.

2.     Beginning no later than on or about September 7, 2004 and continuing to at least October 19, 2004, in the Northern District of Illinois, Eastern Division, and elsewhere,

KEVIN McCORMICK,

defendant herein, devised, intended to devise, and participated in a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses and representations and material omissions, which scheme is more fully described in the following paragraphs.

3.     It was part of the scheme to defraud that defendant KEVIN McCORMICK fraudulently reported trades in S&P 500 futures contracts in order to conceal his actual trading position from the CME, his introducing broker and his clearing firm. Through the fraudulent reporting, the defendant was also able to artificially inflate the value of the equity in his trading account. As a result of the deception, the defendant was able to continue trading, to avoid margin calls and to withdraw funds from his trading account, while concealing the amount of losses in his account and the amount of economic risk the defendant created and caused for his introducing broker and his clearing firm.

4.     It was further part of the scheme to defraud that defendant KEVIN McCORMICK altered trade cards as to the price or the quantity or both to reflect transactions more profitable to himself.

5.     It was further part of the scheme to defraud that defendant KEVIN McCORMICK

4

created trade cards reflecting fictitious transactions to conceal his actual trading position and to artificially inflate his equity position.

6.    It was further part of the scheme to defraud that defendant KEVIN McCORMICK delayed reporting certain transactions to fraudulently alter his reported trading position and the equity value of his trading account.

7.    It was further part of the scheme to defraud that defendant KEVIN McCORMICK intentionally created out-trades to fraudulently delay the accurate calculation of his trading position and the equity in his trading account.

8.    It was further part of the scheme to defraud that defendant KEVIN McCORMICK withdrew funds from his trading account at times, when he knew that he had caused the equity in his account to be inflated.  For instance, on September 10, 2004, the defendant withdrew $5600.  Due to the defendant's scheme, the equity in the account was reported as $13,398, when it actually was approximately a deficit of $55,927.

9.    It was further part of the scheme to defraud that defendant KEVIN McCORMICK intentionally concealed the amount of risk involved in his trading from his introducing broker, from his clearing firm and from the CME.  For instance, through a series of material misrepresentations and omissions on October 18, 2004, defendant KEVIN McCORMICK carried a 167 lot futures contract short position overnight while he misrepresented his position as being flat.  The defendant had neither the equity in his account nor the financial ability to post the approximately $3,000,000 margin required to carry this short position.

10.    It was further part of the scheme to defraud that defendant misrepresented, concealed and hid, and caused to be misrepresented, concealed and hidden, certain material facts, including the

acts and purposes of the acts done in furtherance of the scheme.

11.   As a result of the scheme, the defendant was able to continue trading, to avoid margin calls, to withdraw cash from his trading account and to conceal the risk associated with his trading. The defendant ultimately lost approximately $386,000 and did not have the financial ability to make good on most of the loss. As the defendant knew, Spike, as the defendant's introducing broker, was obligated to pay and did pay the approximately $365,000 the defendant was unable to pay.

12.   On or about September 13, 2004, in the Northern District of Illinois, Eastern Division, and elsewhere,

KEVIN McCORMICK,

defendant herein, for the purpose of executing the scheme and attempting to do so, knowingly caused a thing to be deposited to be sent and delivered by private interstate carrier from Chicago, Illinois to Columbus, Ohio, namely a cash letter issued by LaSalle Bank demanding payment of check numbered 5169, in the amount of $4,000, issued by FC Stone, and made payable to KEVIN McCORMICK, all to complete the withdrawal of funds the defendant made from his trading account at FC Stone at a time when the value of his trading account was fraudulently inflated;

In violation of Title 18, United States Code, Section 1341.

6

## COUNT TWO

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.     Paragraphs 1 through 11 of Count One are realleged and incorporated as if fully set out in this count.

2.     On or about October 1, 2004, in the Northern District of Illinois, Eastern Division, and elsewhere,

### KEVIN McCORMICK,

defendant herein, for the purpose of executing the scheme and attempting to do so, knowingly caused to be deposited a thing to be sent and delivered by private interstate carrier from Chicago, Illinois to Columbus, Ohio, namely a cash letter issued by LaSalle Bank demanding payment of check numbered 5356, in the amount of $2,500, issued by FC Stone, and made payable to KEVIN McCORMICK, all to complete the withdrawal of funds the defendant made from his trading account at FC Stone at a time when the value of his trading account was fraudulently inflated;

In violation of Title 18, United States Code, Section 1341.

## COUNT THREE

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.     Paragraphs 1 through 11 of Count One are realleged and incorporated as if fully set out in this count.

2.     On or about October 15, 2004, in the Northern District of Illinois, Eastern Division,

### KEVIN McCORMICK,

defendant herein, for the purpose of executing the scheme and attempting to do so, knowingly caused to be deposited a thing to be sent and delivered by private interstate carrier from Chicago, Illinois to Columbus, Ohio, namely a cash letter issued by LaSalle Bank demanding payment of check numbered 5562, in the amount of $1,000, issued by FC Stone, and made payable to Mark Jones, all to complete the withdrawal of funds the defendant made from his trading account at a time when the value of his trading account was fraudulently inflated;

In violation of Title 18, United States Code, Section 1341.

## COUNT FOUR

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 11 of Count One are realleged and incorporated as if fully set out in this count.

2.    On or about September 15, 2004, in the Northern District of Illinois, Eastern Division,

KEVIN McCORMICK,

defendant herein, wilfully falsified, concealed and covered up by trick, scheme and artifice a material fact; willfully made a false, fictitious and fraudulent material statement and representation; and, wilfully made and used a false writing and document knowing the same to contain a false, fictitious and fraudulent material statement and entry, specifically concerning the quantity of a transaction on trade card numbered 323, to a registered entity and to a board of trade, each registered or designated pursuant to the Commodity Exchange Act and acting in furtherance of their duties under the Commodity Exchange Act;

All in violation of Title 7, United States Code, Section 13(a)(4).

9

## COUNT FIVE

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.      Paragraphs 1 through 11 of Count One are realleged and incorporated as if fully set out in this count.

2.      On or about September 15, 2004, in the Northern District of Illinois, Eastern Division,

### KEVIN McCORMICK,

defendant herein, wilfully falsified, concealed and covered up by trick, scheme and artifice a material fact; willfully made a false, fictitious and fraudulent material statement and representation; and, wilfully made and used a false writing and document knowing the same to contain a false, fictitious and fraudulent material statement and entry, specifically concerning the price and quantity of a transaction on trade card numbered 327 (999 handwritten), to a registered entity and to a board of trade, each registered or designated pursuant to the Commodity Exchange Act and acting in furtherance of their duties under the Commodity Exchange Act;

All in violation of Title 7, United States Code, Section 13(a)(4).

## COUNT SIX

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.      Paragraphs 1 through 11 of Count One are realleged and incorporated as if fully set out in this count.

2.      On or about September 21, 2004, in the Northern District of Illinois, Eastern Division,

### KEVIN McCORMICK,

defendant herein, wilfully falsified, concealed and covered up by trick, scheme and artifice a material fact; willfully made a false, fictitious and fraudulent material statement and representation; and, wilfully made and used a false writing and document knowing the same to contain a false, fictitious and fraudulent material statement and entry, specifically concerning the quantity of a transaction on trade card numbered 509, to a registered entity and to a board of trade, each registered or designated pursuant to the Commodity Exchange Act and acting in furtherance of their duties under the Commodity Exchange Act;

All in violation of Title 7, United States Code, Section 13(a)(4).

## **COUNT SEVEN**

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.　　Paragraphs 1 through 11 of Count One are realleged and incorporated as if fully set out in this count.

2.　　On or about September 21, 2004, in the Northern District of Illinois, Eastern Division,

### KEVIN McCORMICK,

defendant herein, wilfully falsified, concealed and covered up by trick, scheme and artifice a material fact; willfully made a false, fictitious and fraudulent material statement and representation; and, wilfully made and used a false writing and document knowing the same to contain a false, fictitious and fraudulent material statement and entry, specifically concerning the price and quantity of a transaction on trade card numbered 524 (999 handwritten), to a registered entity and to a board of trade, each registered or designated pursuant to the Commodity Exchange Act and acting in furtherance of their duties under the Commodity Exchange Act;

All in violation of Title 7, United States Code, Section 13(a)(4).

12

## **COUNT EIGHT**

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 11 of Count One are realleged and incorporated as if fully set out in this count.

2.    On or about September 30, 2004, in the Northern District of Illinois, Eastern Division,

### KEVIN McCORMICK,

defendant herein, wilfully falsified, concealed and covered up by trick, scheme and artifice a material fact; willfully made a false, fictitious and fraudulent material statement and representation; and, wilfully made and used a false writing and document knowing the same to contain a false, fictitious and fraudulent material statement and entry, specifically concerning the quantity of a transaction on trade card numbered 838 , to a registered entity and to a board of trade, each registered or designated pursuant to the Commodity Exchange Act and acting in furtherance of their duties under the Commodity Exchange Act;

All in violation of Title 7, United States Code, Section 13(a)(4).

## COUNT NINE

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 11 of Count One are realleged and incorporated as if fully set out in this count.

2.    On or about September 30, 2004, in the Northern District of Illinois, Eastern Division,

### KEVIN McCORMICK,

defendant herein, wilfully falsified, concealed and covered up by trick, scheme and artifice a material fact; willfully made a false, fictitious and fraudulent material statement and representation; and, wilfully made and used a false writing and document knowing the same to contain a false, fictitious and fraudulent material statement and entry, specifically concerning the price and quantity of a transaction on trade card numbered 839 (999 handwritten), to a registered entity and to a board of trade, each registered or designated pursuant to the Commodity Exchange Act and acting in furtherance of their duties under the Commodity Exchange Act;

All in violation of Title 7, United States Code, Section 13(a)(4).

### **COUNT TEN**

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.      Paragraphs 1 through 11 of Count One are realleged and incorporated as if fully set out in this count.

2.      On or about October 1, 2004, in the Northern District of Illinois, Eastern Division,

KEVIN McCORMICK,

defendant herein, wilfully falsified, concealed and covered up by trick, scheme and artifice a material fact; willfully made a false, fictitious and fraudulent material statement and representation; and, wilfully made and used a false writing and document knowing the same to contain a false, fictitious and fraudulent material statement and entry, specifically concerning the quantity of a transaction on trade card numbered 845, to a registered entity and to a board of trade, each registered or designated pursuant to the Commodity Exchange Act and acting in furtherance of their duties under the Commodity Exchange Act;

All in violation of Title 7, United States Code, Section 13(a)(4).

## COUNT ELEVEN

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.      Paragraphs 1 through 11 of Count One are realleged and incorporated as if fully set out in this count.

2.      On or about October 1, 2004, in the Northern District of Illinois, Eastern Division,

### KEVIN McCORMICK,

defendant herein, wilfully falsified, concealed and covered up by trick, scheme and artifice a material fact; willfully made a false, fictitious and fraudulent material statement and representation; and, wilfully made and used a false writing and document knowing the same to contain a false, fictitious and fraudulent material statement and entry, specifically concerning the quantity of a transaction on trade card numbered 899, to a registered entity and to a board of trade, each registered or designated pursuant to the Commodity Exchange Act and acting in furtherance of their duties under the Commodity Exchange Act;

All in violation of Title 7, United States Code, Section 13(a)(4).

## COUNT TWELVE

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 11 of Count One are realleged and incorporated as if fully set out in this count.

2.    On or about October 5, 2004, in the Northern District of Illinois, Eastern Division,

KEVIN McCORMICK,

defendant herein, wilfully falsified, concealed and covered up by trick, scheme and artifice a material fact; willfully made a false, fictitious and fraudulent material statement and representation; and, wilfully made and used a false writing and document knowing the same to contain a false, fictitious and fraudulent material statement and entry, specifically concerning the quantity of one transaction and the price and quantity of another transaction on trade card numbered 985, to a registered entity and to a board of trade, each registered or designated pursuant to the Commodity Exchange Act and acting in furtherance of their duties under the Commodity Exchange Act;

All in violation of Title 7, United States Code, Section 13(a)(4).

17

## COUNT THIRTEEN

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.     Paragraphs 1 through 11 of Count One are realleged and incorporated as if fully set out in this count.

2.     On or about October 5, 2004, in the Northern District of Illinois, Eastern Division,

### KEVIN McCORMICK,

defendant herein, wilfully falsified, concealed and covered up by trick, scheme and artifice a material fact; willfully made a false, fictitious and fraudulent material statement and representation; and, wilfully made and used a false writing and document knowing the same to contain a false, fictitious and fraudulent material statement and entry, specifically concerning the price and quantity of a transaction on trade card numbered 996 (999 handwritten), to a registered entity and to a board of trade, each registered or designated pursuant to the Commodity Exchange Act and acting in furtherance of their duties under the Commodity Exchange Act;

All in violation of Title 7, United States Code, Section 13(a)(4).

18

## **COUNT FOURTEEN**

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.      Paragraphs 1 through 11 of Count One are realleged and incorporated as if fully set out in this count.

2.      On or about October 11, 2004, in the Northern District of Illinois, Eastern Division,

### KEVIN McCORMICK,

defendant herein, wilfully falsified, concealed and covered up by trick, scheme and artifice a material fact; willfully made a false, fictitious and fraudulent material statement and representation; and, wilfully made and used a false writing and document knowing the same to contain a false, fictitious and fraudulent material statement and entry, specifically concerning the price and quantity of a transaction on trade card numbered 251 (999 handwritten), to a registered entity and to a board of trade, each registered or designated pursuant to the Commodity Exchange Act and acting in furtherance of their duties under the Commodity Exchange Act;

All in violation of Title 7, United States Code, Section 13(a)(4).

## COUNT FIFTEEN

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    Paragraphs 1 through 11 of Count One are realleged and incorporated as if fully set out in this count.

2.    On or about October 11, 2004, in the Northern District of Illinois, Eastern Division,

### KEVIN McCORMICK,

defendant herein, wilfully falsified, concealed and covered up by trick, scheme and artifice a material fact; willfully made a false, fictitious and fraudulent material statement and representation; and, wilfully made and used a false writing and document knowing the same to contain a false, fictitious and fraudulent material statement and entry, specifically concerning the price and quantity of a transaction on trade card numbered 252, to a registered entity and to a board of trade, each registered or designated pursuant to the Commodity Exchange Act and acting in furtherance of their duties under the Commodity Exchange Act;

All in violation of Title 7, United States Code, Section 13(a)(4).

## COUNT SIXTEEN

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.     Paragraphs 1 through 11 of Count One are realleged and incorporated as if fully set out in this count.

2.     On or about October 18, 2004, in the Northern District of Illinois, Eastern Division,

KEVIN McCORMICK,

defendant herein, wilfully falsified, concealed and covered up by trick, scheme and artifice a material fact; willfully made a false, fictitious and fraudulent material statement and representation; and, wilfully made and used a false writing and document knowing the same to contain a false, fictitious and fraudulent material statement and entry, specifically concerning the price and quantity of both transactions on trade card numbered 524, to a registered entity and to a board of trade, each registered or designated pursuant to the Commodity Exchange Act and acting in furtherance of their duties under the Commodity Exchange Act;

All in violation of Title 7, United States Code, Section 13(a)(4).

## COUNT SEVENTEEN

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.    At times material to this indictment:

a.    Defendant KEVIN McCORMICK resided in a private family residence in Orland Park, Illinois, on which residence the defendant had two mortgages.

b.    In or about early 2005, defendant KEVIN McCORMICK sought to refinance the residence.

c.    Defendant KEVIN McCORMICK used the services of Interstate Bank in Oak Forest, Illinois to locate a lender to refinance the residence.

d.    During the period from in or about January 2005 to in or about March 2005, defendant KEVIN McCORMICK submitted and caused to be submitted loan applications and other documentation to Interstate Bank and later to New Century Financial Corporation for the purpose of obtaining the refinancing loan.

e.    New Century Financial Corporation (New Century) was a publicly-held originator of subprime residential mortgage loans headquartered in California. It had a local office in Itasca, Illinois.

f.    New Century approved the loan for approximately $500,000 and in or about late March 2005, the loan was closed, the two outstanding mortgage loans were paid and defendant KEVIN McCORMICK received approximately $29,000. New Century eventually sold the defendant's refinancing loan to Carrington Mortgage Services, Inc.

g.    Carrington Mortgage Services, Inc. (Carrington Mortgage) was also in the residential loan business and was headquartered in California.

22

h.     At the time the defendant applied for and obtained the loan from New Century, his trading privileges at the CME had been withdrawn, he had no trading activity in his Spike trading account and he had about a $365,000 debit balance in his Spike trading account.

2.     During the period from in or about January 2005 through March 2005, in the Northern District of Illinois, Eastern Division, and elsewhere,

KEVIN McCORMICK,

defendant herein, devised, intended to devise, and participated in a scheme and artifice to defraud Interstate Bank and New Century and to obtain money and property by means of materially false and fraudulent pretenses and representations and material omissions, which scheme is more fully described in the following paragraphs.

3.     It was part of the scheme to defraud that defendant KEVIN McCORMICK, in order to obtain and retain the approximately $500,000 refinancing loan through Interstate Bank from New Century, misstated material facts and made material omissions about his commodities futures trading, his income, his assets and his liabilities.

4.     It was further part of the scheme to defraud that defendant KEVIN McCORMICK caused to be submitted, as part of his application for the loan, a fraudulent federal income tax return form for 2004. Among other things, the defendant represented on that federal income tax form that he had earned capital gains of $479,774 and total income of $369,164, when the defendant reported $37,685 in capital gains and total income of $91,636 on the income tax return the defendant had prepared for filing with the Internal Revenue Service.

5.     It was further part of the scheme to defraud that defendant KEVIN McCORMICK caused to be submitted, as part of his application for the loan, a phony and fraudulently inflated

December 2004 statement for his Spike trading account. The defendant submitted a statement, which purportedly showed he had December 2004 monthly trading profits of $74,790.60 and 2004 annual profits of $479,774.72. In fact, the defendant had no trading profits in his Spike trading account in December 2004, had annual trading profits in 2004 in his Spike trading account of only $37,679.65 and still had a debit balance in his account of approximately $365,000 at the end of December 2004.

6.    It was further part of the scheme to defraud that defendant KEVIN McCORMICK caused to be submitted to Interstate Bank and to New Century a Uniform Residential Loan Application dated January 31, 2005, which was materially false and misleading. Among other things, the defendant falsely represented that his Spike trading account was worth $120,000, fraudulently reported that his monthly income was $28,200, and failed to disclose over $500,000 the defendant still owed from previous trading losses.

7.    It was further part of the scheme to defraud that defendant KEVIN McCORMICK caused to be submitted to Interstate Bank and to New Century a Uniform Residential Loan Application dated March 23, 2005, which was materially false and misleading. Among other things, the defendant falsely reported monthly income of $13,029.75 and failed to disclose over $500,000 in trading losses he still owed.

8.    It was further part of the scheme to defraud that defendant KEVIN McCORMICK caused to be submitted to Interstate Bank and to New Century a letter dated March 3, 2005, in which the defendant falsely stated that, "As of 3-3-05 my monthly income continues to be approximately $20,000.00 less expenses of approximately $5,000.00 per month. This amount is consistent with last years income."

9.     As a result of the fraud, defendant KEVIN McCORMICK fraudulently obtained and retained for his own benefit approximately $29,000. Moreover, the defendant has not made any payments of principal or interest on the loan since November 2005 and currently owes approximately $496,000 in principal on the loan.

10.     On or about March 28, 2005, in the Northern District of Illinois, Eastern Division and elsewhere,

KEVIN McCORMICK,

defendant herein, for the purpose of executing the scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce certain wirings, signs, signals, and sounds from New Jersey to Chicago, Illinois, namely the wiring of the loan proceeds of $504,271.84 from New Century's bank to Stewart Title Company's bank in anticipation of the loan closing on the same day;

In violation of Title 18, United States Code, Section 1343.

Case 1:08-cr-00539    Document 1    Filed 07/09/2008    Page 26 of 26

## **COUNT EIGHTEEN**

The SPECIAL MARCH 2007 GRAND JURY further charges:

1.      Paragraphs 1 through 9 of Count Eleven are realleged and incorporated as if fully set out in this count.

2.      On or about March 28, 2005, in the Northern District of Illinois, Eastern Division and elsewhere,

KEVIN McCORMICK,

defendant herein, for the purpose of executing the scheme and attempting to do so, knowingly caused to be deposited to be sent and delivered by commercial interstate carrier from Addison, Illinois to Oak Forest, Illinois, a parcel containing a check in the amount of approximately $167,000, in payment of the defendant's earlier mortgage held by Interstate Bank;

In violation of Title 18, United States Code, Section 1341.

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY